United States District Court
Southern District of Texas
**ENTERED**
September 26, 2016
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| AXA ART AMERICAS CORPORATION | § | |
| a/s/o EDWARD J. HUDSON, ROBERT L. | § | |
| HUDSON | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-15-3609 |
| | § | |
| PUBLIC STORAGE | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

AXA Art Americas Corporation, an insurance company specializing in fine art, sued Public

Storage, a storage-space company, asserting a subrogated claim for violating contract and tort duties

allegedly owed AXA's insureds, Edward J. Hudson and Robert L. Hudson.  (Docket Entry No. 1).

AXA sought at least $849,436.00 in actual damages for paintings stolen from a Public Storage unit

allegedly leased by the Hudson Partnership Ltd., an entity the Hudsons co-owned.  (*See* Docket

Entry 1, ¶¶ 8, 27; Docket Entry 10, Ex. 2 at 1[1]).

Public Storage moved to dismiss for failure to state a claim under Rule 12(b)(6) of the

Federal Rules of Civil Procedure, on the basis that its lease agreement, which it attached to the

motion:  (1) was signed by Edgar Dulaca, not the Hudsons, and so the Hudsons had no contract with

Public Storage; (2) contains a specific clause prohibiting subrogation; and (3) contains terms under

which Public Storage is not liable for any loss of, or damage to, property stored in the units.  (*Id*. at

---

[1]  The Hudsons' relationship to the Hudson Partnership, Ltd. is not set out in the pleadings.  Edward Hudson submitted an affidavit, which the court is not considering in deciding the merits of Public Storage's motion to dismiss.  Instead, the court merely notes here that the affidavit clarifies that the Hudsons were co-owners of the Hudson Partnership.

¶ 2-5).

AXA responded by arguing that it met the pleading standard by alleging facts showing that: (1) Edgar Dulaca was acting in his capacity as an employee of the Hudson Partnership Ltd. when he signed the lease; (2) the clause prohibiting subrogation in the Public Storage lease agreement is not legally binding in Texas; and (3) Public Storage is liable for failing to uphold its tort and contract duties to the Hudsons.  (Docket Entry No. 10 at  ¶ 5, 8, 13, 16).

Based on the pleadings, motions, and attachments; the arguments of counsel presented in a hearing as well as in their briefs; and the applicable law, the court grants Public Storage's motion to dismiss under Rule 12(b)(6).   Because further amendment would be futile, the dismissal is without leave to amend.  Final judgment is separately entered.  The reasons for these rulings are explained in detail below.

## I.      Background

### A.      Dulaca Signs the Lease Agreement

On July 1, 2013, Edgar Dulaca signed a lease agreement with Public Storage for one of the storage units.  (Docket Entry No. 13, Ex. 1 at p. 5).  The lease agreement listed an email address, "elaine@hudsonpartnership.net," as the "Occupant Email Address for Electronic Communication." (*Id.* at p. 1).  Public Storage argues that because the lease was in Dulaca's name, Public Storage has no legal relationship with the Hudsons or their partnership, and they have no claim for AXA to assert as a subrogee.  (Docket Entry No. 13 at ¶ 8-12).  AXA responds that Dulaca was acting as an agent for the Hudsons when he signed the lease.  AXA points to the email address, which includes a Hudson domain name, and an affidavit from Dulaca.  (Docket Entry No. 10 at ¶ 5). \

To the extent Public Storage's defense of lack of agency could involve examining the affidavits AXA relies on, the court declines to do so.  Considering the affidavits requires converting

the motion to dismiss to one for summary judgment, which in turn would require giving notice of

the conversion, perhaps an opportunity for further discovery, and time to supplement the record.

Rather than converting the motion to one for summary judgment in order to consider the affidavits,

*see* FED. R. CIV. P. 12(d), the court assumes without deciding that Dulaca acted as an agent of the

Hudsons when he signed the lease agreement.

The arguments this court can properly consider within the motion to dismiss—that the lease

terms shield Public Storage from liability for the stolen artwork and extinguish AXA's right to sue

as the Hudsons' subrogee—are analyzed below.

### 1.     The Lease Agreement Terms

The lease agreement between Dulaca and Public Storage defines the relationship between

the lessor and lessee by detailing the rights and obligations of each.  (Docket Entry No. 13, Ex. 1).

The lease agreement contains a "Purpose and Description of Premises" clause stating:

> Occupant shall have access to the Premises and the common areas of the Property
> only during the property's posted hours and days of operation.  This access is
> conditioned on the Owner's ability to maintain the business, rentability, safety, or
> security of the Premises and the Property, and if such ability is compromised, the
> Owner may take reasonable preventive or corrective measures such as, but not
> limited to, restricting access hours and requiring verification of Occupant's Identity.

(*Id.* at ¶ 1).  The lease agreement contains a further section titled "Use of Premises and Property and

Compliance With Law," which reads:

> Occupant acknowledges and agrees that the Premises and the Property are not
> suitable for the storage of heirlooms or precious, invaluable or irreplaceable property
> such as, but not limited to, . . . works of art . . . .

(*Id.* at ¶ 5).  The lease agreement also contains this "Insurance Release of Liability" clause:

> ALL PERSONAL PROPERTY IS STORED BY OCCUPANT AT THE
> OCCUPANT'S SOLE RISK.   INSURANCE IS OCCUPANT'S SOLE
> RESPONSIBILITY. OCCUPANT UNDERSTANDS THAT OWNER WILL NOT
> INSURE OCCUPANT'S PERSONAL PROPERTY AND THAT OCCUPANT IS
> OBLIGATED UNDER THE TERMS OF THE LEASE/RENTAL AGREEMENT

3

> TO INSURE HIS OWN GOODS. To the extent Occupant's insurance lapses or Occupant does not obtain insurance coverage for the full value of the Occupant's personal property stored in or on the Premises, Occupant agrees Occupant will personally assume all risk of loss.  Owner and Owner's agents, affiliates, authorized representatives and employees ("Owner Agents") will not be responsible for, and Occupant hereby releases Owner and Owner's Agents from any responsibility for any loss, liability, claim, expense or damage to property that could have been insured. . . . Occupant waives any rights of recovery against Owner or Owner's Agents for the Released Claims, and Occupant expressly agrees that the carrier of any insurance obtained by Occupant shall not be subrogated to any claim of Occupant against Owner or Owner's Agents.

(*Id.* at ¶ 6).  The agreement includes the following "Limitation of Owner's Liability" provision:

> Owner and Owner's Agents will have no responsibility to Occupant or to any other person for any loss, liability, claim, expense, damage to property . . . from any cause . . . Occupant acknowledges that he understands and agrees to the provision  of this paragraph. . . .  Occupant agrees that Owner's and Owner's Agents' total responsibility for any Loss from any cause whatsoever will not exceed a total of $5,000.

(*Id.* at ¶ 7).  Finally, the lease agreement contains this "No Warranties; Entire Agreement" provision:

> Owner hereby disclaims any implied or express warranties, guarantees or representations of the nature, condition, safety, or security of the Premises and the Property and Occupant hereby acknowledges that Occupant has inspected the Premises and the Property and hereby acknowledges and agrees that Owner does not represent or guarantee the safety or security of the Premises or the Property or any personal property stored therein, and this Lease/Rental agreement does not create any contractual obligation for Owner to increase or maintain such safety or security.

(*Id.* at ¶ 16).

### B.    The Complaint Allegations

AXA alleges that on April 14, 2015, thieves broke into the storage unit the Hudsons had leased and stole artwork, some of it valuable.  (Docket Entry No. 1 at ¶ 18).  AXA claims that its insurance agreement with the Hudsons gives it a subrogated right to recover against Public Storage for violating the contract and tort duties it promised the Hudsons when it leased the storage space. (*Id.* at ¶ 13, 24).

4

On February 17, 2016, Public Storage moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and attached the lease agreement. (Docket Entry No. 13 & Ex. 1). Public Storage argues that the lease terms shield it from liability for the stolen artwork and that the lease agreement extinguishes AXA's right to sue as the Hudsons' subrogee.

AXA responds by arguing that the release in the lease agreement between Public Storage and the Hudsons is insufficient under Texas law to eliminate its rights under the insurance policy it issued to the Hudsons. (Docket Entry No. 10 at ¶ 8). AXA also argues that the "Purpose and Description of Premises" provision of the lease agreement makes it ambiguous whether Public Storage had a duty to ensure the safety of the Hudsons' stored personal property and that the court must interpret the provision in the manner most favorable to AXA in applying the Rule 12(b)(6) standard. Each argument and response is analyzed below.

## II.    The Rule 12(b)(6) Legal Standard

A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 (2009). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully." *Id.*

In considering a Rule 12(b)(6) motion to dismiss, the court is generally limited to the allegations on the face of the complaint. To the extent a Rule 12(b)(6) motion relies on matters outside the pleadings, the court is usually obliged to either ignore those additional data or to treat the motion "as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). But the Fifth Circuit has carved out a narrow exception to that general rule: when the defendant attaches documents to a Rule 12(b)(6) motion, the court may consider them without conversion to summary judgment if they are referenced in the complaint and are central to the plaintiff's claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir.2000); *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (collecting cases from the First, Second, Third, Fourth, Sixth, Seventh, and Eleventh Circuits holding similarly). The court will evaluate Public Storage's motion to dismiss under the ordinary Rule 12(b)(6) standard. The only documents outside the pleadings the court relies on are the insurance contract between Axa and the Hudsons and the rental contract between Dulaca and Public Storage; both documents are referenced in the complaint and are central to AXA's claim.

### III. Discussion

Public Storage asserts that AXA has no right of subrogation both because the lease agreement waived it and because the lease agreement released Public Storage from liability for damage to, or loss of, the contents of the unit. (Docket Entry No. 13 at ¶ 15, 20). AXA responds that the waiver of subrogation rights in the lease agreement was legally inoperative and that there is at least an ambiguity as to the duty that Public Storage owed the Hudsons. (Docket Entry No. 10 at ¶ 8, 14-15); Oral Argument 6:13, *AXA v. Public Storage* (No. 4:15-CV-03609).

The court need not decide whether Texas law allows an insured unilaterally to waive its

6

insurer's right to bring a subrogated claim, because, as explained below,  AXA's claims cannot proceed whether or not the subrogation waiver is effective.  AXA's tort claim is barred by the economic-loss doctrine and its contract claims are barred by the unambiguous language of the lease agreement.

> **A.** **Texas law does not clearly dictate whether an insured can waive its insurer's right to bring a subrogated claim asserting whatever rights the insured had.**

The basis for AXA's action is a subrogation clause in its insurance contract with the Hudsons.  That clause reads: "Transfer of Subrogation Rights.  If any person or organization to or for whom we make payment under this insurance has rights to recover damages from another, those rights are transferred to us.  That person or organization must do everything necessary to secure our rights and must do nothing after 'loss' to impair them."  (Docket Entry No. 10).  Public Storage argues that in addition to the releases from liability, the lease agreement  provided that the Hudsons' insurer would not have a right to pursue a subrogated claim.  The lease agreement states that the "Occupant expressly agrees that the carrier of any insurance obtained by Occupant shall not be subrogated to any claim of Occupant against Owner or Owner's Agents."  (Docket Entry No. 13, Ex. 1 at 3 ¶ 6).

Public Storage argues that even if the anti-subrogation provision does not separately bar the claims, the subrogated insurer may recover only those damages that the insured could have recovered.  Public Storage also argues that an insured can unilaterally extinguish its insurer's right to recover on a subrogated claim by signing an anti-subrogation provision in a contract with a third party.

Public Storage is correct that a subrogee may assert only those rights that its subrogor could assert.  An insured may extinguish its insurer's ability to recover on a subrogated claim against a third party by waiving its own right to recover against that party.  One way to do this is by releasing

the third party from liability for a specified set of acts.  *See, e.g.*, *Am. Zurich Ins. Co. v. Barker Roofing, L.P.*, 387 S.W.3d 54, 61 (Tex. App.—Amarillo 2012); *Munters Euroform GmbH v. Am. Nat'l Power, Inc.*, No. 03-05-00493-CV, 2009 Tex. App. WL 5150033, at *3 (Tex. App.—Austin 2009); *Trinity Universal Ins. Co. v. Bill Cox Const., Inc.*, 75 S.W.3d 6, 10 (Tex. App.—San Antonio 2001).  On that point, Texas law is clear.  To the extent the Hudsons waived their right to recover against Public Storage, AXA is similarly barred from asserting that right through subrogation.

The court need not rule on the second argument.  Public Storage did not brief its basis for asserting that an insured can unilaterally waive its insurer's subrogation rights separately from waiving its own right of recovery.  The court's review of Texas law revealed cases supporting AXA's right to bring a subrogated claim notwithstanding the purported waiver,[2] as well as cases that at least suggest that the waiver could potentially bar AXA's recovery independent of the substantive waivers in the lease.[3]  The court need not decide the issue raised in Public Storage's second argument.  Although Texas law on this issue is unclear, AXA loses as a matter of law even assuming that the waiver is legally ineffective.

**B.      There is no viable claim for AXA to assert.**

**1.      The economic-loss rule bars the tort claim.**

When "the only loss or damage" that a plaintiff has suffered "is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract."  *S.W. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991).  "The nature of the injury most often determines which duty or

---

[2]  *See Approach Operating, LLC v. Resolution Oversight Corp.*, No. 03-11-00688-CV, 2012 WL 2742304, at *2 (Tex. App.—Austin July 3, 2012); *Munters Euroform GmbH*, 2009 Tex. App. WL 5150033, at *3; *Austin Indep. Sch. Dist. v. H.C. Beck Partners, Ltd.*, No. 03-07-00228-CV, 2009 WL 638189, at *2 n.3 (Tex. App.—Austin Mar. 13, 2009) ("Subrogation rights, when they exist, belong to the subrogated party. In the situation presented here, these rights belong to and are waivable by the insurer—not the insured.").

[3]  *See Trinity*, 75 S.W.3d at 10; *TX. C.C., Inc. v. Wilson/Barnes Gen. Contractors, Inc.*, 233 S.W.3d 562, 574 (Tex. App.—Dallas 2007).

duties are breached.  When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex 1986); *MEMC Pasadena, Inc. v. Riddle Power, LLC*, 472 S.W.3d 379, 397 (Tex. App.—Houston [14th Dist.] 2015).

A plaintiff cannot circumvent this rule by simply alleging that the defendant negligently performed his contract duties.  In *Jim Walter Homes*, the Texas Supreme Court reversed a jury verdict awarding exemplary damages for a homebuilder's grossly negligent supervision of the construction of a house.  711 S.W.2d at 617-18.  The court held that recovery on a tort theory was barred by the economic-loss doctrine, because the injury alleged was a shoddily constructed house, which was the subject of the parties' contract.  *Id.*  Similarly, in *MEMC Pasadena*, the court found it important that the plaintiff had alleged a contract theory in addition to a tort theory, that the gist of the allegations in the tort theory was substantially similar to the gist of the contract theory, and that the plaintiff sought identical damages as the remedy for each theory of wrongdoing and harm. 472 S.W.3d at 397-98.  These factors led the court to reject the tort theory and confine the plaintiff's claim to one sounding in contract.

The rule is not unlimited.  "[A] party [cannot] avoid tort liability to the world simply by entering into a contract with one party [otherwise the] economic loss rule [would] swallow all claims between contractual and commercial strangers." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (quoting *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 419 (Tex.2011)) (internal quotation marks omitted) (alterations in original).  "Thus, a party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Id.*

AXA argues that a single contract relationship can give rise to separate contract and tort

duties, citing the Texas Supreme Court's opinion in *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 510 (1947), for the proposition that every contract is accompanied by a common-law duty of care.  AXA then cites *Gibbs v. ShuttleKing, Inc.*, 162 S.W.3d 603, 610 (Tex. App.—El Paso 2005), for the proposition that "a landlord who retains control over the security and safety of the premises" owes a tenant a duty to exercise "ordinary care to protect the employee against an unreasonable and foreseeable risk of harm from the criminal acts of third parties."  *Id.* But AXA does not advance an argument for, or cite a case showing, why this case is distinguishable from the economic-loss doctrine cases cited above.  AXA acknowledges that its negligence allegations "dovetail with Public Storage's duties under the" lease agreement.  (Docket Entry No. 10 at ¶ 14).  Its citation to *Gibbs* does not support separate contract and tort grounds for liability and damages.  Instead, the breach of contract claim is based on the allegation that Public Storage had a duty to secure the storage unit against theft, the same duty alleged as the basis of the tort claim. The injury and damages allegations for the tort and contract theories are the same.  Under both, AXA seeks the same amount as compensation for the loss of the stolen artwork.  The subject of the contract between Public Storage and the Hudsons was the storage of the artwork that was stolen. This case is well within the established boundaries of the economic-loss doctrine.  AXA's tort claim cannot proceed as a matter of law, given AXA's factual allegations and taking them as true.

> **2. Under unambiguous terms in the lease agreement, Public Storage did not owe the Hudsons a duty to protect the property in the storage unit and is protected from liability for the alleged loss of that property.**

The complaint allegations and lease agreement show that, as a matter of law, the Hudsons waived their right to sue Public Storage over alleged breaches of tort or contract duties that resulted in the theft of art stored in their unit.  The lease agreement relieved Public Storage of the duty to prevent the criminal actions of a third party or to ensure the security of units on the premises.  The

agreement released Public Storage from liability for loss from third parties' theft of property stored on the premises.

Under Texas law, "[w]hether a party has breached a contract is a question of law for the court, not a question of fact for the jury." *Meek v. Bishop Peterson & Sharp P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied). "The court determines what conduct is required by the parties, and, insofar as a dispute exists concerning the failure of a party to perform the contract, the court submits the disputed fact questions to the jury." *Id.* "While the factual determination of what actions were taken is for the fact finder, whether those actions constitute a breach of contract is a question of law for the court." *In re Cano Petrol.*, 277 S.W.3d 470, 473 (Tex. App.—Amarillo 2009, orig. proceeding). "When a contract is not ambiguous, the construction of the written instrument is a question of law for the court." *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex.1999). Questions of law can be properly decided by this court at this stage of the lawsuit.

"Whether a contract is ambiguous is [also] a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). Ambiguity arises "only when the application of the applicable rules of interpretation to the instrument leave it genuinely uncertain which one of . . . two meanings is the proper" one. *R & P Enters. v. LaGuarta, Gavel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex.1989). "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous." *Nat'l Union*, 907 S.W.2d at 520. "[I]f the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, which creates a fact issue on the parties' intent." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d

587, 589 (Tex.1996).  In those cases, "the interpretation of a contract is a question of fact" for the jury.  *Fireman's Fund Ins. Co. v. Murchison*, 937 F.2d 204, 207 (5th Cir.1991) (citing *Toren v. Braniff, Inc.*, 893 F.2d 763, 765 (5th Cir.1991); *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex.1987)).

A "contract is not ambiguous because it suffers from mere 'uncertainty or lack of clarity.'" *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 431 (5th Cir. 2003) (quoting *Madera Prod. Co. v. Atlantic Richfield Co.*, 1998 WL 292872, at *3 (N.D. Tex.1998)).  "The failure to include more express language of the parties' intent does not create an ambiguity when only one reasonable interpretation exists." *Id.* (quoting *Columbia Gas*, 940 S.W.2d at 591) (internal quotation marks omitted).  Similarly, ambiguity "does not arise simply because the parties advance conflicting interpretations of the contract; rather, for an ambiguity to exist, both interpretations must be reasonable." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000).  To determine whether an ambiguity exists, the court looks "at the contract as a whole in light of the circumstances present when the parties entered the contract." *Friendswood Dev. Co. v. McDade Co.*, 926 S.W.2d 280, 282 (Tex.1996).

The lease agreement defined the duties that Public Storage owed the Hudsons. The following sections of the agreement unambiguously release Public Storage from liability to the Hudsons or their subrogees for damages to, or loss of, property stored in the storage unit.

- The "Insurance Release of Liability" provision states that "ALL PERSONAL PROPERTY IS STORED BY OCCUPANT AT THE OCCUPANT'S SOLE RISK. . . [and] **Owner and Owner's agents, affiliates, authorized representatives and employees ("Owner Agents") will not be responsible for, and Occupant hereby releases Owner and Owner's Agents from any responsibility for any loss, liability, claim, expense or damage to property**

**that could have been insured.**" (Docket Entry No. 13, Ex 1 at ¶ 6).  Further, the lease

agreement states that the "Occupant waives any rights of recovery against Owner or Owner's

Agents for the Released Claims." (*Id.*).

- The "Limitation of Owner's Liability; Indemnity" provision states that Public Storage as the
  Owner and "**Owner's Agents will have no responsibility to Occupant or to any other
  person for any loss, liability, claim, expense, damage to property . . . from any cause .
  . . .** (*Id.* at ¶ 7).

- The "No Warranties; Entire Agreement" provision reaffirmed that Public Storage extended
  no "**implied or express warranties, guarantees or representations of the nature,
  condition, safety, or security of the Premises and the Property**" and stated that the lease
  agreement does not **"create any contractual obligation for Owner to increase or
  maintain such safety or security."** (*Id.* at ¶ 16).

These provisions make clear that Public Storage and the Hudsons agreed that Public Storage

would not be liable for damage to, or the loss of, property stored in the unit.  "[W]hen parties enter

into an agreement based on a writing that is not ambiguous, the court will give effect to the parties'

intention as expressed in the writing." *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005).

AXA argues that the contract is ambiguous, citing the "Purpose and Description of Premises"

clause in the lease agreement.  This clause states that the Hudsons' "access [to their unit] is

conditioned on the Owner's [Public Storage's] ability to maintain the business, rentability, safety,

or security of the Premises and the Property." (Docket Entry No. 13, Ex. 1 at ¶ 1).  The clause states

that the Hudsons' access can be limited if that ability is compromised, by allowing Public Storage

to take "reasonable preventive or corrective measures."  These measures include "restricting access

hours and requiring verification of Occupant's Identity." (*Id.*).  AXA argues that this clause is

ambiguous and could create a duty that was breached by Public Storage's failure to prevent the theft of the Hudsons' art.  (Docket Entry No.  10 at ¶ 14; Oral Argument 6:11, *AXA v. Public Storage* (No. 4:15-CV-03609).

AXA's argument is unpersuasive.  This clause does nothing more than grant Public Storage the right to restrict the Hudsons' access to their unit for the stated reasons.  The provision is unambiguously a limit on the lessee's right to access a leased storage unit.  The provision creates no affirmative duty by Public Storage.   And AXA's interpretation is not reasonable in light of the lease agreement as a whole.  The parties repeatedly disclaimed Public Storage's liability for lost or damaged property in express, specific terms.   In light of these thorough and explicit releases, the suggestion that this limitation-on-access provision imposes a duty on Public Storage to secure the premises is not, as a matter of law, a reasonable interpretation that could create ambiguity.

AXA also argues that the "Right to Enter, Inspect, and Repair Premises" clause in the lease agreement creates a duty on the part of Public Storage that could give rise to a claim.  (Docket Entry No.  10 at ¶ 15). This clause preserves an affirmative right for Public Storage to enter its units.  It does not grant the Hudsons rights, and it is not evidence that Public Storage owed them specific duties.  As with the premises-description clause, AXA's proposed interpretation is unreasonable in light of the repeated and express liability disclaimers in the lease agreement.

The lease agreement is unambiguous.  The parties agreed that Public Storage would not be responsible for the security of the storage unit or its contents and would not be liable to the lessor for damage to, or loss of, property stored in the unit.  AXA has not stated a breach-of-contract claim on which relief can be granted, because it has not and cannot allege that Public Storage violated a contract duty it owed the lessees.

## IV.    Conclusion

14

Public Storage's motion to dismiss, (Docket Entry No. 13), is granted. Because amendment would be futile, the dismissal is without leave to amend. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir.2002); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999); 6 CHARLES ALAN WRIGHT, ET AL., FED. PRAC. & PROC. CIV. § 1487 (3d ed.). Final judgment is separately entered.

SIGNED on September 26, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

15